1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. TROGDON, II,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:21-cv-00387-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 18, 21, 22) |

## I.

## INTRODUCTION

Plaintiff Michael Trogdon, II ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security disability benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 8, 12, 13.)

## II.

## BACKGROUND[2]

Plaintiff alleges disability based on (1) degenerative disc disease of the lumbar and thoracic spine, (2) history of lumbar spine fracture, (3) cognitive disorder, (4) epilepsy, (5) anxiety, (6) depression, and (7) obesity.  (Admin. Rec. ("AR") 20, ECF No. 14-1.)

On January 31, 2018, Plaintiff filed an application for Social Security benefits under Title II, alleging disability beginning November 19, 2012.  (AR 161–68.)  Plaintiff's claim was initially denied on March 8, 2018, and denied upon reconsideration on July 18, 2018.  (AR 90–93, 95–99.)  On March 4, 2019, Plaintiff appeared before Administrative Law Judge Trevor Skarda (the "ALJ"), for an administrative hearing.  (AR 38–59.)  On May 21, 2019, the ALJ issued a decision denying benefits.  (AR 17–37.)  On March 19, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 8–13.)

Plaintiff initiated this action in federal court on March 11, 2021, and seeks judicial review of the denial of his application for disability benefits.  (ECF No. 1.)  The Commissioner lodged the operative administrative record on November 17, 2021.  (ECF No. 14.)  On February 3, 2022, Plaintiff filed an opening brief.  (ECF No. 18.)  On April 6, 2022, Defendant filed a brief in opposition.  (ECF No. 21.)  On April 20, 2022, Plaintiff filed a reply.  (ECF No. 22.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

An RFC determination is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE").  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.      Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less

than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland Co.), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S DECISION**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 22–32.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from his alleged disability onset date of November 19, 2012, through his date last insured of December 31, 2015. (AR 22.) At step two, the ALJ found Plaintiff had the severe impairments of (1) epilepsy, (2) degenerative disc disease of the thoracic and lumbar spine, (3) history of lumbar spine fracture, (4) cognitive disorder, (5) anxiety, (6) depression, and (7) obesity. (Id. (citing 20 C.F.R. § 404.1520(c)).) The ALJ also noted Plaintiff alleged a number of symptoms — knee pain, ankle pain, and hernia — which the ALJ did not find to be medically-determinable impairments, due to the lack of any medical signs or laboratory findings to substantiate Plaintiff's allegations, or any definitive diagnosis from an acceptable medical source. (AR 23.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§

404.1520(d), 404.1525, and 404.1526.  (AR 23.)  The ALJ explained Plaintiff's back impairment did not meet listing 1.04 because there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively.  (Id.)  The ALJ found Plaintiff's epilepsy impairment did not meet listing 11.02 on the basis that there was little objective evidence of the seizures identified under that listing.[4]  (Id.)

The ALJ also found Plaintiff's mental impairments, considered singly and in combination, did not meet the paragraph B criteria,[5] as follows.  Plaintiff had a "moderate" limitation in understanding, remembering, or applying information because, while neuropsychological testing in March 2015 found deficits in verbal comprehension, processing speed, language functioning, executive functioning, concept formation, deductive logical reasoning, and problem solving, it did not suggest any memory impairment, and Plaintiff was found to have fully intact abilities in the areas of basic auditory comprehension, visual form discrimination, visual pattern recognition, visual motor integration, visual organization, visual reasoning, verbal learning, verbal memory, non-verbal learning, and non-verbal memory; the treatment notes showed Plaintiff had fluent speech, intact language skills, normal recent and remote memory, and sufficient fund of knowledge; and Plaintiff "had the cognitive capacity to drive, prepare simple meals, do laundry, follow short instructions, and understand simple things."  (AR 24 (citing AR 1071–84, 425, 435, 544, 561, 592, 599–620).)

The ALJ found Plaintiff had a "mild" limitation in interacting with others because there was little objective evidence of major social isolation or serious interpersonal conflicts; Plaintiff generally demonstrated a pleasant attitude, cooperative behavior, and good eye contact; Plaintiff's

---

[4] Listing 11.02 requires evidence of one of the following: generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months, despite adherence to prescribed treatment; dyscognitive seizures occurring at least once a week for at least three consecutive months, despite adherence to prescribed treatment; generalized tonic-clonic seizures occurring at least once every two months for at least four consecutive months, despite adherence to prescribed treatment, with market limitation in one of the functional domains; or dyscognitive seizures occurring at least once every two weeks for at least three consecutive months, despite adherence to prescribed treatment, with market limitation in one of the functional domains.  (Id. (citing Listing 11.02).)

[5] To satisfy "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing themselves.  (Id. (citing Listings 12.02, 12.04, 12.06).)

psychotropic medication and psychotherapy were both reportedly effective in reducing his anxiety; Plaintiff did not require psychiatric hospitalization; and Plaintiff could shop in stores and get along with authority figures.  (Id. (citing AR 17–37, 225–39, 320, 336, 348, 382, 391, 403, 412, 471, 621–34, 635–1040).)

The ALJ found Plaintiff had a "moderate" limitation in concentrating, persisting, or maintaining pace because, while the March 2015 neuropsychological testing showed deficits in attention and concentration, Plaintiff's treatment notes showed his attention span and concentration were generally adequate; Plaintiff could admittedly drive, prepare simple meals, do laundry, follow short instructions, and understand simple things; and Plaintiff reported his psychotropic medication and psychotherapy were helpful.  (Id. (citing AR 17–37, 225–39, 382, 403, 544, 561, 599–620, 1071–84).)

The ALJ found Plaintiff had a "moderate" limitation in adapting or managing himself because, even though treatment notes showed Plaintiff was sometimes anxious and emotionally restricted, his mood, affect, behavior, thought process, and thought content were generally normal; Plaintiff's alleged "frequent anxiety attacks" did not require psychiatric hospitalization; and Plaintiff's psychotropic medication and psychotherapy were admittedly helpful.  Moreover, the ALJ found Plaintiff's alleged difficulties appeared to be premised on physical, rather than mental, symptoms; and regardless, Plaintiff had the mental capacity to drive, prepare simple meals, do laundry, and shop in stores.  (AR 24–25 (citing AR 382, 403, 471, 592, 621–34, 1074).)

Before proceeding to step four, the ALJ determined Plaintiff's RFC permitted him to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [H]e could stand and walk for only 4 hours in an 8-hour workday. He required a sit-stand option allowing him to sit or stand alternatively every 30 minutes for 1 minute.  He could only occasionally climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds.  He was limited to no more than occasional balancing, stooping, kneeling, crouching, and crawling.  He must avoid concentrated exposure to hazards, which are defined as operational control of dangerous moving machinery and unprotected heights.  He was limited to simple, routine, and repetitive tasks.  He was also limited to work in a low-stress job, which is defined as requiring only occasional decision making and

having only occasional changes in the work setting.

(AR 25.)

At step four, the ALJ found Plaintiff could not, through the date last insured, perform any past relevant work.  (AR 30 (citing 20 C.F.R. § 404.1565).)  At step five, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of (1) Sealer (DOT 559.678-014; sedentary exertional level; unskilled; SVP 2, with approximately 15,000 jobs in the national economy), (2) Inspector (DOT 559.687-074; light exertional level; unskilled; SVP 2, which is eroded by up to 50%, leaving approximately 50,000 jobs in the national economy), and (3) Electrical Assembler (DOT 725.684-018; sedentary exertional level; unskilled; SVP 2, with approximately 14,400 jobs in the national economy). (AR 30–31.)  Therefore, the ALJ found Plaintiff was not under a disability at any time from November 19, 2012, through December 31, 2015.  (AR 31.)

**V.**

**DISCUSSION AND ANALYSIS**

Plaintiff raises the following issues on appeal: (1) the ALJ improperly analyzed the medical opinions; (2) the ALJ improperly rejected Plaintiff's testimony; (3) the ALJ improperly rejected the lay witness testimony; and (4) the ALJ's Step-Five finding is not supported by substantial evidence.  (ECF No. 18 at 4.)  The Court addresses each argument in turn.

**A.    Whether the ALJ Improperly Analyzed the Medical Opinions**

Plaintiff argues the ALJ improperly analyzed the medical opinions for several reasons. (Id. at 7–11.)  First, Plaintiff argues the ALJ applied an incorrect legal standard: Plaintiff acknowledges the new Social Security regulations effective March 2017; nevertheless, Plaintiff argues the ALJ was required to comply with Ninth Circuit precedent regarding the treating physician rule.  (Id. at 7–9; see also ECF No. 22 at 2–3.)  Second, Plaintiff argues the ALJ improperly discounted the medical opinions of his treating neurologist, Dr. Dilpreet Kaur, and his treating physicians, Drs. Kyle Heron and Bettina Pardo Harner.  (ECF No. 18 at 9–11.)

1.    Legal Standard

Defendant correctly notes that claims filed after March 27, 2017, as here, are subject to

the revised Social Security Administration regulations.  (ECF No. 21 at 9–13); see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions.  See id. Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources (e.g., requirement that ALJ must 'give good reasons' for the weight given a treating source opinion; specifically, "clear and convincing reasons" for rejecting a treating or examining physician's uncontradicted medical opinion, and "specific and legitimate reasons" for rejecting a contradicted opinion, supported by substantial evidence in the record).  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).[6]  Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative

---

[6] Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  However, the ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

District courts in this circuit have observed that it is not clear whether the Ninth Circuit precedent requiring "clear and convincing reasons" remains viable in light of the new regulations.  See Allen T. v. Saul, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. Jun. 29, 2020) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards.").  Nonetheless, California district courts appear to have generally found that Ninth Circuit precedent delineating the deference due to physician opinions does not survive the new regulations because those cases relied on the "treating source rule" in the prior version of the regulations.  See, e.g., Kathy Jean T. v. Saul, No. 20cv1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."); Jones v. Saul, No. 2:10-cv-01273 AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (finding the revised regulations valid, entitled to deference, and supersede prior Ninth Circuit case authority interpreting the treating physician rule); see Revisions, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 ("[W]e are not retaining the treating source rule . . . for claims filed on or after March 27, 2017.").  Furthermore, this Court must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  See Allen T., 2020 WL 3510871, at *3 (C.D. Cal. Jun. 29, 2020) (quoting Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981–82 (2005)).

Based on the foregoing authorities, the Court finds Plaintiff's argument that the ALJ was required to apply the "treating physician rule" (ECF No. 18 at 8–9; ECF No. 22 at 2–3) is

unavailing.   Nonetheless, the Court notes that Plaintiff's arguments, although based on the treating source rule, are still capable of analysis under the new regulations.[7]   Accordingly, the Court will address the ALJ's evaluation of any differing medical opinions under the 2017 regulations.

2.   Medical Opinions

**a.   Dr. Dilpreet Kaur**

On November 10, 2014, Dr. Kaur, a treating neurologist, diagnosed Plaintiff with complex partial seizure disorder.   (AR 427.)   At that time, Plaintiff had only had one episode of a generalized seizure.   Dr. Kaur opined Plaintiff should avoid driving, pools, bathtubs, or heights. He also opined Plaintiff was not able to work and needed to apply for disability.

**b.   Dr. Kyle Heron**

In a check-the-box medical opinion,[8] Dr. Heron opined Plaintiff could lift less than ten pounds, stand and walk for less than an hour and sit for less than an hour in an eight-hour day; that Plaintiff would need to be able to shift positions at will; that Plaintiff could occasionally climb stairs, but could never climb ladders, twist, stoop, or crouch; that he was limited in his ability to reach, handle, finger, and feel as a result of his back impairment; and that he should avoid hazards.   (AR 1099–1101.)   Dr. Heron also opined Plaintiff was likely to be absent from work more than four times each month as a result of his impairments.   (AR 1101.)

///

---

[7] "Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions." P.H. v. Saul, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021).   As always, the ALJ's reasoning must be free of legal error and supported by substantial evidence.   See Ford, 950 F.3d at 1154.   Indeed, the Court notes that, where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.   See Andrews, 53 F.3d at 1041 (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician). Thus, even under the new regulatory framework, the Court must still determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.   See Martinez V., 2021 WL 1947238, at *3.

[8] The Court notes that, while an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017), the Ninth Circuit has nevertheless held "the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." Ford, 950 F.3d at 1155 (citations omitted).

### c.     Dr. Bettina Pardo Harner

On December 10, 2018, Dr. Harner diagnosed Plaintiff with both generalized and tonic/clonic seizures and complex partial seizures, and opined Plaintiff's seizures did not impair his ability to walk/stand/sit/lift, etc., but did prevent him from operating machinery or "functioning at any job," Plaintiff would need to avoid heights, and he would be absent from work more than four times each month.  (AR 1218–20.)  On January 31, 2019, in a seizures RFC questionnaire, Dr. Harner opined plaintiff's seizures resulted in depression, irritability, short attention span, memory problems, behavioral extremes, and social isolation; that they "limit[] his activities" and would likely be disruptive to coworkers; that Plaintiff could operate a motor vehicle but could not work at heights or with power machines; that Plaintiff would need unscheduled breaks of one hour or more during the work day; that Plaintiff was incapable of even "low stress jobs"; and that Plaintiff would be absent more than four times each month.  (AR 1221–23.)

### d.     State Agency Medical Consultants

On March 8, 2018, state agency medical consultant Dr. A. Nasrabadi opined that Plaintiff could occasionally lift twenty pounds; frequently lift ten pounds; did not have any other push/pull limitations; could stand/walk six hours in an eight-hour day; sit for six hours in an eight-hour day; had no manipulative, visual, or communicative limitations, but required limited exposure to hazards; could not climb ladders, ropes, or scaffolds, and only occasionally balance, stoop, kneel, crouch, or crawl, or climb ramps and stairs.  (AR 67–70.)  Dr. Louis Chelton agreed with Dr. Nasrabadi's opinion.  (AR 1041–42.)  Dr. L. Kiger largely concurred with Dr. Nasrabadi's opinion, but added that Plaintiff could stand and walk for no more than four hours in an eight-hour workday and would need to alternate between sitting and standing every 30 minutes for one minute.  (AR 82–84.)

### e.     Dr. E. Aquino-Caro, State Agency Psychiatric Consultant

Dr. Aquino-Caro opined that Plaintiff had no more than a moderate limitation in concentrating, persisting, and maintaining pace, and could perform simple, routine, and repetitive tasks.  (AR 84–85.)

3.      The ALJ's Review of the Medical Opinions

The ALJ found the opinions of Drs. Heron, Harner, and Kaur were unpersuasive because they were not supported by those doctors' own treatment notes, which did not document serious findings, persistent clinical signs, or frequent seizure episodes to support the extreme limitations set forth in the treating physicians' opinions.  (AR 29.)  Further, the ALJ found the opinions of Drs. Heron, Harner, and Kaur were unpersuasive because they were inconsistent with Plaintiff's testimony that he could drive frequently, and medical records showing Plaintiff's seizure medication and pain treatment was effective.  (AR 28 (citing AR 17–37, 215, 599–620, 710).)

By contrast, the ALJ found the state agency medical consults' opinions were persuasive because they were supported by this same general absence of evidence of frequent, debilitating seizures, as well as medical records showing Plaintiff generally had a normal gait and normal neurologic function, as well as Plaintiff's admitted ability to drive, follow short instructions, understand simple things, shop in stores, get along with authority figures, evidence that Plaintiff's alleged frequent anxiety attacks did not require psychiatric hospitalization, and that his mental health treatment was effective.  (AR 28 (citing AR 17–37, 209–1040, 1066–98, 1102–1217).)  The ALJ found Dr. Aquino-Caro's opinion persuasive for the same reasons, and because it was consistent with medical records showing Plaintiff's "generally adequate mental functioning."  (AR 28 (citing AR 290–539, 555–1040, 1071–84).)

4.      Analysis

As noted, the ALJ found the medical record lacked the objective findings of frequent and persistent seizures.  The Court has reviewed the underlying treatment records and confirms the ALJ's finding in this regard is supported by the record.  The Court also notes a significant portion of the treatment notes appear to record subjective symptoms Plaintiff reported to his doctors, upon which a number of diagnoses appear to rely.  But the Ninth Circuit has provided that an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted.  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence,

and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion") (internal citation omitted).  Furthermore, the ALJ properly notes contradictory objective findings in the medical records.  Dr. Harner's examinations, for example, document generally unremarkable findings, including normal mental status, gain, coordination, strength, and sensation.  (See, e.g., AR 544, 561.)  There are many other instances of largely unremarkable findings with respect to Plaintiff's physical and psychiatric examinations.  (See, e.g., AR 320–21, 336, 348, 425–26, 471, 592, 604, 623.)

Plaintiff additionally takes issue with the ALJ's reliance on Plaintiff's testimony that he could drive frequently and the ALJ's finding that Plaintiff's seizure medication and pain treatment was effective, and Plaintiff appears to argue the ALJ failed to properly consider his impairment of lumbar degenerative disc disease when determining his limitations.  (ECF No. 18 at 10–11.)

As to the driving testimony, Plaintiff argues that, while he may drive sometimes, he must stop driving when he feels a seizure coming on, and go lie down.  Plaintiff argues the ALJ failed to develop the record on this point by failing to elicit testimony regarding how far Plaintiff drives at one time.  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  Neither of the aforementioned circumstances appears here.  Rather, Plaintiff reported to his doctors in some medical records that he was not able to drive at all; whereas, during his hearing testimony, Plaintiff testified he was still able to drive.  (AR 52, 229, 1222.)  At bottom, the ALJ properly considered this evidence in determining Plaintiff's seizures did not limit his functioning as severely as Plaintiff originally alleged.

As to Plaintiff's seizure medication and treatment, Plaintiff cites to medical records from 2018 and 2019.  (ECF No. 18 at 9–10 (citing AR 1225, 1256, 1259).)  But these treatment notes were not relevant to the ALJ's determination of whether Plaintiff was disabled prior to December 21, 2015 (the date last insured).  See Hill v. Colvin, No. 1:14-cv-00353-JLT, 2015 WL 2358281,

at *6 (E.D. Cal. May 15, 2015) (citing Flaten, 44 F.3d at 1461 & n. 4; Waters v. Gardner, 452 F.2d 855 (9th Cir. 1971)) (a "long line of cases" has established that a claimant must establish disability by the date last insured, and that " 'any deterioration in [his] condition subsequent to that time is, of course, irrelevant' ").  Meanwhile treatment notes the ALJ cited from the relevant time period support his finding.  For example, treatment notes indicate Plaintiff's back pain was "almost completely relieved with a combination of radiofrequency and medication."  (AR 605, 609, 611, 615, 517.)  Other treatment notes indicate that the medication Vimpat effectively controlled Plaintiff's seizures.  (AR 643, 710, 715.)

Plaintiff's final argument, that the ALJ failed to properly consider his impairment of lumbar degenerative disc disease, is belied by a plain reading of the ALJ's opinion.  The ALJ expressly notes not only that Plaintiff's back impairment does not meet listing 1.04 because there is no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively in the record (AR 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526)), but also discusses portions of the record inconsistent with the alleged severity of Plaintiff's back lumbar degenerative disc disease, including: (1) treatment notes frequently mentioning that medications, injections, and radiofrequency ablation were effective in reducing Plaintiff's pain and improving his physical functioning (AR 27 (citing AR 599–620)); (2) medical records indicating Plaintiff generally had a normal gait (id. (citing AR 290–464, 540–620)), normal strength, sensation, and deep tendon reflexes in the extremities through the date last insured (id. (citing AR 290–464, 540–620, 1102–1217)); (3) a lack of evidence in the record that surgery was required through the date last insured (id.); (4) the fact that Plaintiff's use of a cane and walker were not prescribed by a physician (id. (citing AR 225–39)); (5) no relevant electrodiagnostic findings in the record (id.); and (6) Plaintiff's testimony indicating the ability to drive, which requires considerable motor function and physical exertion (id. (citing AR 38–59, 225–39)).

In sum, the ALJ's analysis addressed the persuasiveness, including supportability and consistency of the opinions of Drs. Heron, Harner, and Kaur and the prior administrative medical findings, and that analysis is supported by substantial evidence in the record.  See Robert S. v.

Saul, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *5 (D. Or. Mar. 3, 2021), report and recommendation adopted, 2021 WL 1206576 (D. Or. Mar. 29, 2021).   Plaintiff may have identified some portions of the record that are consistent with a finding of disability, however, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."   Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).   Accordingly, the Court finds the ALJ did not err in his evaluation of the medical opinions.

### B.      Whether the ALJ Improperly Rejected Plaintiff's Testimony

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.   (AR 26.)   Plaintiff argues the ALJ improperly rejected his symptom testimony because the ALJ failed to provide specific, clear, and convincing findings to support his rejection of Plaintiff's testimony.   (ECF No. 18 at 11–13.)

### 1.      Legal Standard

The ALJ is responsible for determining credibility,[9] resolving conflicts in medical testimony and resolving ambiguities.   Andrews, 53 F.3d at 1039.   A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); S.S.R. 16-3p; see also Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.   See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3.   First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some

---

[9] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.   Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."   S.S.R. 16-3p at 1-2.

degree of the symptom or pain alleged.  <u>Garrison</u>, 759 F.3d at 1014; <u>Smolen</u>, 80 F.3d at 1281–82.

If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject

the claimant's testimony about the severity of those symptoms only by providing specific, clear,

and convincing reasons for doing so."  <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020)

(citations omitted).  "This requires the ALJ to specifically identify the testimony [from a

claimant] she or he finds not to be credible and . . . explain what evidence undermines that

testimony."  <u>Id.</u> (citations and internal quotations omitted).

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

determining the severity of claimant's pain and its disabling effects."  <u>Burch</u>, 400 F.3d at 680–81;

<u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. §

404.1529(c)(2)).  The ALJ must examine the record as a whole, including objective medical

evidence; the claimant's representations of the intensity, persistence and limiting effects of his

symptoms; statements and other information from medical providers and other third parties; and

any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

Additional factors an ALJ may consider include the location, duration, and frequency of the pain

or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or

side effects of any medication; other measures or treatment used for relief; conflicts between the

claimant's testimony and the claimant's conduct — such as daily activities, work record, or an

unexplained failure to pursue or follow treatment — as well as ordinary techniques of credibility

evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's

statements and testimony, and other testimony by the claimant that appears less than candid.  <u>See</u>

<u>Ghanim</u>, 763 F.3d at 1163; <u>Tommasetti</u>, 533 F.3d at 1039; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028,

1040 (9th Cir. 2007); <u>Smolen</u>, 80 F.3d at 1284.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's

subjective complaint, the Court "will not engage in second-guessing."  <u>Thomas</u>, 278 F.3d at 959.

2.     <u>Plaintiff's Testimony</u>

Plaintiff complained of seizures, fatigue, back pain, cognitive problems, anxiety attacks,

and depression.  (AR 42.)  He claims he has two to three seizures a week.  (AR 43.)  Anxiety, stress, and fatigue exacerbate his seizure disorder.  (AR 44.)  Usually, Plaintiff can "feel [the seizure] coming on," and therefore has time to lie down before the seizure happens.  (AR 43.)  Plaintiff's seizures allegedly involve loss of consciousness, convulsions, tongue biting, change in facial expression, repetitive gestures or utterances, and lip smacking, chewing, or swallowing.  Medications have "somewhat" helped.  (AR 44.)

Plaintiff claims his back pain is constant, even though he had surgery in 2017.  (AR 45.)  The pain radiates to the lower extremities, causing pain and weakness and making it hard to bend down towards the floor.  (AR 46.)  Plaintiff testified he can only walk 100 feet before he needs to rest.  (Id.)  He is able to sit for 20 to 30 minutes at a time, and estimated he could lift 25 pounds.  (AR 46–47.)  As a result of his back pain, Plaintiff claims he has trouble sleeping, he cannot do yard work, he can only do very minimal cooking, not too much cleaning—a few dishes, a load of laundry here and there, very minimal grocery shopping—and he mostly stays on the couch until his wife comes homes from work.  (AR 49–51.)  Sometimes he requires help putting on his socks and shoes. (AR 51.)  Sometimes Plaintiff visits family or friends.  (AR 52.)  He drives three to four times per week.  (Id.)

Plaintiff also claims he experiences two to three anxiety/panic attacks per week.  (AR 47.)  Plaintiff does not attend therapy, even though admittedly "it helps sometimes," but he does occasionally attend therapy with his wife "when we believe that we need it."  (AR 48.)  As to Plaintiff's medications, Plaintiff testified that he continues to take medications every day, and that he quit smoking marijuana every day around July or September 2018.  (See AR 49.)  Plaintiff also testified that he was not aware of any side effects from his medications.  (Id.)

3.    Analysis

Plaintiff argues the ALJ fails to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony because he does not identify specific aspects of Plaintiff's testimony which are inconsistent with any specific portion of the medical record, but instead only cites the objective medical evidence generally as being inconsistent with the degree of impairment Plaintiff alleged.  (ECF No. 18 at 12.)  The Court disagrees.

The ALJ found Plaintiff's testimony regarding the frequency (purportedly two to three times per week) and severity of his seizures (*i.e.*, loss of consciousness, convulsions, tongue biting, change in facial expression, repetitive gestures or utterances, and lip smacking, chewing, or swallowing) was not supported in the record because: (1) there was no documentation of "frequent emergency room visits or repeated hospitalizations" (AR 26 (citing, generally, AR 290–1040, 1066–98, 1102–1217)); (2) Plaintiff continues to drive three to four times a week and there is no evidence that relevant restrictions have been placed on his driver's license (id. (citing AR 17–37)); (3) a treating neurologist stated Plaintiff can operate a motor vehicle (id. (citing AR 1222)); (4) Plaintiff admitted his medications were effective in controlling his seizures (id. (citing AR 215)); (5) a treatment record dated May 7, 2015, indicated Plaintiff had significant improvement in the control of his epilepsy with Vimpat and was not a candidate for surgical treatment (id. (citing AR 710)); and (6) the record demonstrated Plaintiff's neurologic examinations were generally normal (id. (citing generally, "*e.g.*," AR 290–464, 540–54)).  The ALJ's reasons for discounting Plaintiff's testimony with respect to the severity of his back pain is set forth, *supra*, and incorporated herein.

On this record, the Court finds the ALJ made specific citations to the administrative record that demonstrate clear and convincing reasons in support of his evaluation of Plaintiff's symptom testimony.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10. While Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted). Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

### C.    Whether the ALJ Improperly Rejected the Lay Witness Testimony

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ

1   "should explain the weight given to opinions from these sources or otherwise ensure that the
2   discussion of the evidence in the determination or decision allows a claimant or subsequent
3   reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the
4   outcome of the case."   Wilson v. Berryhill, No. 17-cv-05385-PJH, 2018 WL 6421874, at *12
5   (N.D. Cal. Dec. 6, 2018).   Germane reasons must also be specific.   Bruce v. Astrue, 557 F.3d
6   1113, 1115 (9th Cir. 2009).

7        Plaintiff argues the ALJ improperly rejected the lay witness testimony of Plaintiff's wife,
8   Debra Trogdon, because the ALJ failed to provide germane reasons for discounting her
9   testimony.   (ECF No. 18 at 13–15.)   However, the ALJ considered Mrs. Trogdon's report, found
10  it "largely mirrors Plaintiff's allegations," and implicitly rejected it for the same reasons applied
11  to Plaintiff's testimony.   (AR 26.)   Because Mrs. Trogdon's statements regarding Plaintiff's
12  activities and symptoms largely mirrored Plaintiff's testimony, the same reasons previously
13  discussed for discounting Plaintiff's allegations apply here.   See Valentine v. Astrue, 574 F.3d
14  685, 694 (9th Cir. 2009) (ALJ's valid reasons for rejecting claimant's testimony were equally
15  germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably
16  germane reasons for dismissing the [lay] testimony, even if he did not clearly link his
17  determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)
18  (approving ALJ's dismissal of daughters' lay testimony on basis that they were merely repeating
19  the claimant's statements, where daughters' statements did not explain sufficiently when and to
20  what extent they had the opportunity to observe their mother).

21       Thus, in light of the Court's conclusion that the ALJ provided clear and convincing
22  reasons supported by substantial evidence for discounting Plaintiff's symptom testimony, and
23  because Mrs. Trogdon's testimony mirrored Plaintiff's complaints, the Court finds the ALJ
24  appropriately re-incorporated his earlier discussion by reference when rejecting Mrs. Trogdon's
25  lay witness statement, and his discounting of Mrs. Trogdon's statements was not error.

26       **D.      Whether the ALJ's Step-Five Finding is Supported by Substantial Evidence**

27       As previously noted, at step five, "the Commissioner has the burden to identify specific
28  jobs existing in substantial numbers in the national economy that [a] claimant can perform despite

[his] identified limitations," which he may do either through VE testimony or by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted); Osenbrock, 240 F.3d at 1162–63 (citing Tackett v. Apfel, 180 F.3d 1094, 1100–01 (9th Cir. 1999)). Here, the ALJ used the testimony of a VE.

Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy. 20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988). Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

As detailed *supra*, the ALJ determined Plaintiff's RFC permitted him to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b)[10] with several limitations, including "simple, routine, and repetitive tasks," and "work in a low-stress job, which is defined as requiring only occasional decision making and having only occasional changes in the work setting." (AR 25.) The ALJ applied the aforementioned RFC to his hypothetical to the VE, and relied on the testimony of the VE that Plaintiff could perform the duties of a sealer (a sedentary, unskilled, SVP 2 position), inspector (a light work, unskilled, SVP 2 position), and electrical assembler (a sedentary, unskilled, SVP 2 position). (AR 30–31.) Plaintiff argues the ALJ erred at step-five for several reasons. (ECF No. 18 at 15–17.)

First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to account for all of Plaintiff's impairments in the hypotheticals

---

[10] Pursuant to the disability regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

he provided to the VE.  Namely, Plaintiff argues the hypothetical was incomplete because the ALJ improperly omitted the limitations assessed by Drs. Heron, Harner, and Kaur, and alleged by Plaintiff and his wife.  As to this argument, the Court finds Plaintiff is merely rehashing his prior arguments that the ALJ improperly discounted his testimony, his wife's statements, and his treating physicians' opinions.  Because the Court previously found the ALJ properly addressed the persuasiveness of the opinions of Plaintiff's treating physicians and the prior administrative medical findings, supported by substantial evidence; the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's allegations; and the ALJ provided germane reasons for discounting Mrs. Trogdon's statements, the ALJ was not required to incorporate those limitations into the hypothetical given to the VE.  Thus, Plaintiff's argument on this basis fails.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); see also Embrey, 849 F.2d at 423 (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

Second, Plaintiff argues the ALJ and VE both failed to explain how the identified jobs would be able to accommodate Plaintiff's need to sit or stand every 30 minutes during the workday.  This argument appears to be contradicted by the record.  That is, the ALJ asked the VE to identify jobs that account for the limitation that the hypothetical individual "requires a sit/stand option or ability, allowing the person to sit or stand alternatively, every 30 minutes for one minute. . . ."  (AR 54.)  The VE testified a variety of jobs were available in accordance with the ALJ's hypothetical and the ALJ reasonably relied on this testimony.  (AR 54–55.)  The Court is unpersuaded that the ALJ had a duty to further inquire as to this limitation.

Furthermore, if Plaintiff wished to challenge the VE's testimony as to this issue, he was required to do so during the administrative hearing.  See Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2018) (holding claimant's failure to challenge a VE's job numbers during the administrative proceedings waives the issue on appeal, particularly where the claimant was represented at the hearing by counsel) (quoting Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.

1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal" and rejecting brand new challenge to number of jobs in the local area based on VE testimony)).  Plaintiff's attorney was expressly given the opportunity to question the VE during the hearing before the ALJ and raise this issue, but did not do so (see generally AR 57–58).  On this record and legal authorities, the Court cannot conclude the ALJ failed to properly consider Plaintiff's limitation of requiring the option to sit/stand every thirty minutes.

Finally, Plaintiff argues the ALJ erred in determining Plaintiff could complete jobs with a GED Reasoning Level of 2 based on his limitations.  More specifically, Plaintiff argues Level 2 positions involve more frequent changes than Level 1 and therefore do not comport with the ALJ's determination that Plaintiff could have "only occasional changes in the work setting." However, the Court does not see any conflict between the ALJ's RFC and the identified jobs. Notably, the ALJ did not express in his RFC that Plaintiff was limited to either SVP 1 or 2 work, but rather only required that Plaintiff was limited to "simple, routine, and repetitive tasks" and "work in a low-stress job, which is defined as requiring only occasional decision making and having only occasional changes in the work setting."  (AR 25.)  Plaintiff appears to focus solely on the latter phrase "only occasional changes," rather than acknowledging it as a descriptor of the limitation identified by the ALJ: that Plaintiff must work in a "low-stress job."  Overemphasizing the latter phrase while ignoring the term "low-stress job" takes the phrase out of context and mischaracterizes the RFC limitation.

Moreover, Plaintiff identifies no legal authorities to support his interpretation; meanwhile, Ninth Circuit caselaw indicates that the limitations expressly identified by the ALJ are consistent with Level 2 jobs.  See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (holding "simple" or "repetitive" tasks is consistent with Level 2 reasoning) (collecting cases); Lara v. Astrue, 305 Fed. Appx. 324, 326 (9th Cir. 2008) (finding that "someone able to perform simple repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); see also Zavalin, 778 F.3d at 847 (Where the plaintiff was limited to simple, routine, and repetitive work, the court found that

the plaintiff's limitations were in conflict with the demands of Level 3 reasoning, but that "Level 2 Reasoning . . . seems at least as consistent with [the plaintiff's] limitation as Level 3 Reasoning, if not more so.").[11]  Finally, the jobs the VE identified were all unskilled positions, which the VE testified comported with the ALJ's hypothetical requiring a low-stress environment with no more than occasional changes in the work setting.  (AR 31, 54–56.)  Again, Plaintiff does not challenge the VE's testimony.  Plaintiff's argument is therefore unavailing.

Accordingly, the Court will not disturb the ALJ's step five determinations.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds the ALJ's decision to be supported by substantial evidence in the administrative record, and free from remandable legal error.  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Michael Trogdon, II.  The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated:   __July 25, 2022__

_____
UNITED STATES MAGISTRATE JUDGE

---

[11] Moreover, a plain reading of the definitions of SVP levels 1 and 2 does not support Plaintiff's argument.  There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex).  Rounds, 807 F.3d at 1002–03 (citing Appendix C - Components of the Definition Trailer, 1991 WL 688702).  Level 1 is defined as "Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  Id.  Level 2 is defined as "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  Id.  As noted from the plain language of these definitions, neither Level 1 nor 2 relates to whether a job is a "low stress job" or whether a job will need many changes in a work setting.